The next two cases Parker v. Barlow and Ventimiglia v. O'Malley have been submitted on the briefs. The next and final case on calendar for argument today is the Imperial Sovereign Court of the Council for appellant please approach and proceed when ready Good morning. May it please the court, Michael Russell for appellants Austin Knudsen and Elsie Arntzen, often referred to as the state defendants in this matter. I would like to reserve five minutes for rebuttal, if I may. Thank you. If the errors underlying the district court's preliminary injunction in this matter had to be summarized with one word, I would use the word conflation. This conflation permeates the court's order at issue on appeal here. And of the many issues identified in appellant's briefing, that conflation is most evident and I'd like to focus on three particular errors identified by the state defendants. One being that the district court failed to properly scrutinize the alleged injuries and the traceability and regressability for purposes of standing, both for the relief requested and the underlying merits claim. It also applied the wrong standard to plaintiff's facial First Amendment challenge and including the analysis necessary to determine whether the conduct at issue is expressive and therefore protected by the First Amendment. And the last main focus of mine for today is that the district court wrongly concluded that an impermissible purpose animated the enactment of HB 359 and erred to the extent that it relied on that conclusion to issue its preliminary injunction. On the standing issue, has there been any disavowal of enforcement of the statute against the plaintiffs? From the attorney general specifically or other? Any of the defendants. Not that I'm aware of. That goes to the argument that the state defendants presented that really the, under Montana's criminal law system and relatedly under the occupational licensure framework that defendant Arnston oversees, that there are numerous other parties that have the same or more ability to enforce the statute at issue. In a similar vein, counsel, have there been any threats of prosecution or license denial? There's no evidence of that, to my knowledge. And that's particularly important in this case because it's a pre-enforcement challenge. A plaintiff can't simply allege a chilling effect. A plaintiff must prove a more concrete injury than simple fear of potentially unconstitutional law being on the books. Is that true in the First Amendment context where we care a lot about chilling effect? Even in the First Amendment context. And this court addressed that issue in a recent case, I believe it was 2022 in Paxson where it set forth the three-prong test in determining standing in a pre-enforcement challenge in the First Amendment context. The first prong is whether the plaintiffs have articulated a concrete plan to violate the law in question. And there are a number of problems with plaintiff's allegations in that regard, not the least of which being an absence of any allegation that they intend to, in any of the performances at issue, to the extent they fit the requisite elements of the definition, they don't intend to appeal to a prurient interest in sex. And that's a prerequisite for any of the conduct outlined. That's not a prerequisite for the drag story hour. No. And that's what I would like to highlight in terms of the conflation because the drag story hour and sexually oriented performances are two separate and distinct forms of conduct that this bill seeks to regulate. The former, well, the sexually oriented performances are regulated in a variety of different contexts, different settings, et cetera. But in all cases, again, they must be intended to appeal to a prurient interest in sex. Separately, drag story hours are prohibited in state-funded schools and libraries during normal operating hours or as part of school-sponsored extracurricular activities. Well, that's not exactly the wording. It says any school or library that receives any state funds. That was a paraphrase, Your Honor. I would refer to the bill for the exact language, but that's the gist of it. Is it the state's position that this would apply only to public schools and public libraries? Any state-funded school. Okay. So that could include private schools and private libraries? I believe so if they receive state funding. Okay. And is there a definition of school? Does it include universities? I don't believe so. So that's where the codification instructions, and I could be wrong about that, but I believe it's K through 12. That's where the codification instructions come into play under, I believe, it's section five of the bill where it says that section three, where the only place drag story hour appears aside from the definitions, is to be codified and considered to be integral with the parts of, I believe it's 20-7-1 and vice versa. So it's implied you're saying that it's only K through 12 through where it's codified? My memory of that specific code section, that's what I believe, but I could be wrong on that. But my point is, well, one of the points is that in considering these provisions under Montana's rules of statutory construction, the surrounding statutory terms have to be considered in effectuating the meaning of the statute at issue or the terms at issue. If we found that part of this statute is unconstitutional, is this appropriate for severance? Absolutely. In fact, the bill, HB 359, specifically has a severability clause. Do you have a citation of a Montana standard of severance, or is it just the same as what courts apply in federal cases? I don't know the exact answer to that. I assume it's similar, but the severability clause is pretty specific as to how it should be severed if it could. And that's another issue that's pertinent to the limiting construction that the district court's required to undergo in both the First Amendment facial challenge as well as the void for vagueness challenge. I have a couple other questions about how to interpret this statute. It's a criminal statute. Is there a mens rea requirement for Section 2 or Section 3? Well, the, if I would turn, pardon me, I'm turning to the bill itself. So Section 2, I don't believe there is any, so this is part of what needs to be deconstructed with this bill and compartmentalizes who is actually liable under, criminally liable under Section 2. That would be the business owner. So does the business owner, operator, manager, employee need to have any particular mens rea to violate the statute? There's not a specific one set on the statute. So under Montana's- There's no explicit one? Is there any Montana statute or case law saying we would, that there's one incorporated or not? In effect, the default mens rea, to my recollection, is purposeful or knowing. Do you have a site for that? Is it statutory or is it case law? I believe it's both. I don't have that off the top of my head, but I can get that for you. It reads like strict liability. Pardon me? The statute reads like strict liability. No mens rea required. If you do this act, you're liable. I believe Montana statutes specifically state that if strict liability is to be the standard for a particular statute, that has to be set out specifically. And that's not specifically set out here. But again, that wasn't a- There are sites for that? If there is authority for that, please- I would give the same answer. That issue wasn't very squarely addressed in briefing below. It was largely focused on the particular First and Fifth Amendment analyses, as well as standing, among others. And- Do you have a position on, in terms of the section two, if a person under 18 years of age, it reads like there's no exception to this. They can't check ID. There can't be parental consent. Is that the state's position? I mean, if they check ID and it appears valid, and it turns out to be mistaken, is there a violation? Perhaps. I think that would be an as-applied analysis under those circumstances. And- And if the parent consents, it would still be a violation. There are no parental consent exceptions in this statute. And then I think the same questions I have for section three. Your position is there's no explicit mens rea requirement. Your understanding is that there may be an implied purposeful requirement. Do you know what the purposeful requirement would apply to in these sections? Which elements? Well, this one, I believe, includes- I could be wrong about this. So, yeah, I would give the same answer for section three. And again, the criminal- whatever criminal liability attaches for under- section three is set out in section three, subsection four. And those- those are a fine and as- as applied occupational licensure penalties. As far as the merits of the First Amendment issue, one of the- the glaring problems in the court's analysis is it's- it's bare assumption that the conduct at issue, as alleged by the plaintiffs, actually amounts to inherent expressive conduct. And that, in determining whether something is expressive conduct that's protected by the First Amendment, that the court looks to the test set out for- set out in Texas v. Johnson, which we included in our briefing. But it- at the outset, it is- it's plaintiff's burden to establish the- establish this element. And the plaintiff- plaintiffs did not in this case. Told otherwise, as the court has- the Supreme Court has said, would be to create a rule that all conduct is presumptively expressive. I agree with you that the drag story hour and the sexually oriented performance require different analyses. The- on the drag story hour, what exactly do you consider to be the conduct that is being regulated? So the con- the conduct would be the administrator or employee of a publicly funded school or library allowing the- that, I guess, is one- one of the con- but the conduct that they're not allowed to occur is the- the drag story hour set out in the statute. In the drag story hour itself, so in the reading of the children's books and educational activities, what do you consider to be that- that non-expressive conduct? Well, I- again, I would go back to the plaintiff's burden of establishing that. It's not entirely clear to me what- what the expression intended is, and that's part of the- Isn't the point of- I mean, it seems to me that Montana thinks that there's an expression happening there, and that's why this law exists. I mean, the conduct is reading stories to kids. So somebody comes into the library and volunteers to read stories to kids, and I'm going to read Goodnight Moon, and I'm going to read Curious George, and whatever they're going to read. And that's the conduct. And Montana is upset about somebody coming in in a particular- presenting themselves in a particular way. Isn't Montana assigning an expressive element to what it's criminalizing here? Perhaps to a degree, but that doesn't mean the- that the analysis, that issue assumes that there is- there is First Amendment protection under those particular circumstances. I think this is where it gets to- How do you deal with our decision in green that says that beauty pageants are expressive conduct? And of course, what's going on there is just sort of like how I'm presenting myself. Well, this is an issue that we- we did address in the briefing, and I think it goes to, for example, this court's decision in the Edge case. The name is Edge, not the descriptor, where the court effectively found that a person's choice of clothing is not- itself is not inherently expressive. And I think- so it has to be- In that case, didn't they- didn't the plaintiffs basically say they weren't engaging in any expressive activity by their clothing choices? I don't recall what the specific plaintiff's allegations were in that case, but I know that the- this court rejected the argument that scantily clad baristas conveyed a free speech protective message of fearless body acceptance and freedom from judgment. So I assume that was the argument that- that the plaintiffs proffered in that case. How do you deal with our test in Swisher where we talked about, you know, when there is expressive conduct, if the state is aiming their regulation at the expressive aspect of the conduct, we treat that like any other content-based regulation? So assuming it- this were to be considered a content-based regulation, and I'd be the first to admit that the First Amendment jurisprudence isn't exactly a paragon of clarity. So- but what is clear is that in the First Amendment context, the court treats the- when minors are involved and sexualized content is involved in the same context, the court allows greater leeway for the state to regulate. I understand that. Where is the requirement that the drag story hour contains sexualized content in the statute? That- that is not a specific requirement in- set out in the definitions. I think that was- that concern was present as indicated by the legislative testimony. Not in the statute. So a drag story hour can contain no sexualized content and would still be prohibited by the statute, wouldn't it? Well, that- it's- it's not clear. The- the- it's- it's unclear how an objective viewer- so back to the Texas v. Johnson test, how an objective viewer would- observing somebody dress in drag, for example, a man performing or reading while dressed in attire stereotypically associated with women without accompanying political speech or- or dialogue would necessarily discern an unmistakable or overwhelmingly apparent communication of a particular message. And that's- that was what- what's unclear. And I think it's specifically regarding the drag story hours, the legislature was concerned with the secondary effects of- of that, based on the evidence they considered, were the disruption of the children's normative development and normal- normal education. Well, how do you deal with our- the Supreme Court's decision in the video game case, Entertainment Merchants Association, where the court basically said, if you're worried about the effects of expression on children, that's not a secondary effects case. That's primary effects. Well, whether it's- it's- and that's where I go back to the lack of clarity in First Amendment jurisprudence. It's not clear to me what- what standard would necessarily apply. But under any standard, it has to consider the state's compelling interest in protecting minors, which the- the district court in this case totally disregarded. In the cases where the court has said there is a compelling interest in regulating content with a sexually oriented content that is indecent or lewd or vulgar, the court has still applied strict scrutiny. As in the Playboy case. So how does the state meet its burden to show that the- the statute survives strict scrutiny? Well, as the state asserted below, even if- if strict scrutiny were to apply it, it's still satisfied because- and again, this has to be tailored to the specific application that goes to the difference between as applied and facial and overbreadth, which is set out in the briefing. I'll have to rely on that at this point. In your brief- briefing, do you address the- the issues of narrow- narrow tailing? We- we explain that the conducted issue as- so under the terms of the statute where and how it's applied, it- it targets the places where children are likely to be, schools, libraries, et cetera. It explicitly says, for example, in Section 2, when minors are present. I mean, all of the terms in this statute are centered around- centered around minors. Don't some of these rules apply? I mean, in a location owned by an entity that receives any form of funding from the state, a sexually oriented performance is completely prohibited. So how- what is the connection to minors being present in any location owned by an entity that receives any form of funding by the state? So that goes to one of the state's other interests. That specific application goes to the state's interest in not using its public funding resources to facilitate particular speech. And that- that was one of the arguments asserted below. And you're saying that's not the- it's not being justified by the interest in protecting children, just justified in this- by the state's interest in controlling its own funding? Well, I think it justified by both. And the state says it's not going to use its funding for activities that could be potentially harmful to minors. I see I'm out of my- my time for- until rebuttals. I'd like to reserve the remainder. All right, thank you, Councilman. Thank you. Good morning. May it please the Court. Constance VanCleay on behalf of the plaintiffs and appellees. Montana House Bill 359 is a sweeping restriction on protected speech across the state of Montana. It applies in traditional public forums, in limited public forums, in privately owned businesses, and in venues that have received any form of funding from the state without any temporal restriction or requirement in terms of a minimum amount of funding. It applies to engaging in learning activities with anyone under the age of 18 wearing a gendered costume. It applies to showing films consistent with Motion Picture Association ratings. And with regard to those entities that have received state funds, that restriction applies even when the audience includes only people of the age of 18 or older. Just on- I'm sorry to interrupt you, but on the motion picture issue, the state says that there's an exception built in the cross-reference. Can you address that? Yes, absolutely. So the statute that is cross-referenced applies only to four separate statutes within- so the codification instruction says that the provisions of that title and chapter apply. But that particular definition statute applies only to four statutes, and those statutes are really focused specifically on the issue of distributing pornographic materials to minors. It doesn't define performance more broadly, but really has to do with that issue of a newspaper, newsstand, or other vendor that is distributing pornographic materials. So your position is not actually incorporated by reference in the statute itself? That's correct. That's correct. And, you know, the- HP 359 does incorporate- attempt to incorporate some other provisions by reference, which is further evidence that that's the case. But that codification instruction can't extend the scope of the definition section that includes that definition of performance. The restrictions on sexually-oriented performances may even extend to salacious dancing, which is undefined, and to lewd or lascivious depictions or descriptions, mere words describing genitalia or sexual conduct. Counsel, in your view, is there any portion of this statute that's constitutional? No, Your Honor. I think it would take a rewrite to tailor the statute to Miller and Ginsburg, which is what would be required. I want to be clear about that. Your position is that it has to come under the obscenity test, otherwise it can't be regulated? I think with- yes. Yes, it has to- Can we explore that for just a minute? Because I'm trying to- we don't have- I think your friend across the aisle makes- sort of points out the obvious in the sense that the case law in this arena is complicated. And we've got all kinds of doctrines that get developed in particular contexts, and then we have to figure out, like, how do they work in other contexts? And we don't have a case that really squarely deals with this new context. So what I'm trying to figure out is just sort of stepping back from this case and figuring out the big principles at play here. Is it your position that- and I guess I may be asking the exact same thing I asked a minute ago, but in a different way. Is it your position that the state cannot regulate expression, speech that is going to a children's audience, that is something less than obscenity, but is nonetheless sexual? Your Honor, in terms of that question as to the substance, the extent of the state's power is laid out in Ginsburg. So, yes, that is my position. How do you deal with cases like- Let me get this question answered, though. This is a very important question. So could you answer the question specifically in general? Yes. Yes, that the obscenity test, which is loosened when you're dealing with minors and loosened in a way that preserves the nuance between an audience of 17-year-olds or an audience of, you know, four-year-olds, that that is the limits of the state's power to restrict speech when it comes to criminalizing speech. I guess I read the cases perhaps slightly different than you. I think the case law does suggest that the states have- not suggest, they state- the states have a significant interest in health and welfare of minors, and that gives them a little bit more leeway in terms of regulation with regard to sexual, salacious, lewd speech than it has with regard to adults. Is that just that basic premise you agree with? I agree with that. Okay. So if we have that sort of agreement of foundational principle, at least in the context of regulating sexually-oriented performance or sexually-oriented speech in a school setting where you have a captive audience, kids are not necessarily there voluntarily, the law requires them to be in school, I come back to my question of, is it your position that in that particular context, and I understand that this statute applies broader than that, but I'm curious about that particular context, is it your position that the state doesn't have the authority to regulate something short of obscenity? No, that is not my position. I think when you look at the drug story hour provision- I think you have to set that aside. I mean, there's no sort of sexualness attached to that definition. Right. So we set that aside and we have sexually-oriented performance. And I'm trying to figure out if that was- if the state has the ability to do something along the lines of what it's trying to do there. I think that the state does have some- unquestionably has broader authority there. And we would be looking at Garcetti, we would be looking at Pickering when it comes to restrictions that are- that restrict the speech of employees. This law doesn't just do that because it also imposes criminal penalties and it isn't really focused directly on curriculum. It's complicated, but there would be more leeway if we were looking at a law that exclusively regulated without imposing criminal penalties, you know, instruction in public schools. But there's a number of reasons why that's not what this law does. But yes, the state wouldn't be required or a local school district wouldn't be required to meet the Miller and Ginsburg test in order to limit speech. So then if your view in this- if your view is then that this statute doesn't fail because it doesn't incorporate Miller, then why, in your view, does this statute fail? Again, focusing on the sexually-oriented performance part of it. Looking, looking- narrowing the focus on sexually-oriented performances in like public schools, if we were looking at that specifically, then I think the criminal penalties and the vagueness problems would step in and basically occupy the field there. Because the restrictions on sexually-oriented performances are so ill-defined that they don't give fair notice of what is and is not allowed. And so there's- but in terms of- And then, so that I have the whole field, let's move the context to the libraries. So there it's different, right? Because the kids aren't a captive audience. You don't have to be at the library. You choose to be at the library. And if something's going on there that you don't like, you leave. So in that context, why does this statute fail? Again, the criminal penalties and the vagueness problems with the law exist in equal measure in libraries. In a library setting, and perhaps in the extracurricular setting in schools as well, you would be looking at like a public forum analysis and whether or not this were a viewpoint-based restriction. Certainly the state has broader leeway, but it's so hard to pin down what is and is not a sexually-oriented performance that I really can't determine whether or not there's some application of this law that could be permissible in those settings. What do you think on the vagueness issue, just on the sexually-oriented performance, what do you think are the vague terms that are not susceptible of a narrowing in construction? Yes, thank you, Your Honor. A number of them. Stripping applies to pretending to remove even an outermost layer of clothing in a, quote, sexual manner. Sexual manner is not defined. The statute includes this orphan provision, sexually-oriented. It's unclear whether the definition of sexually-oriented performance also incorporates that definition of sexually-oriented in some way. The definition of sexually-oriented extends to salacious dancing, which is undefined. Any simulation of sexual activity, undefined. Any lewd or lascivious, undefined. Depiction or description, undefined of human genitals or sexual conduct. And then if you look down at the definition of sexually-oriented performance itself, that also extends to performance that features sexual conduct. That reference to sexual conduct, however, includes no cross-reference, unlike the definition of sexually-oriented. On the Part 10 definition of sexually-oriented performance, there is the catch-all limiting clause about intended to appeal to a prurient interest in sex, which is then defined elsewhere in the code, is my understanding. And why is that not a sufficiently clear limiting factor? That is an attempt to incorporate the Miller standard. So I don't think that the term prurient interest is undefined or unclear. The problem there is that it is only a partial attempt to incorporate only one prong of the three required prongs under Miller and Ginsberg. That gets back to my line of questioning of if a state has the authority in the sexual speech expression space to regulate something short of obscenity, we don't need all the elements of Miller. So why, I mean, the prurient interest in sex is throughout all our obscenity cases, right? Courts talk about that. It's a very strange phrase. Nobody on the street would know what the heck that means. But we talk about that legally as though we can understand what that means. And so I guess I'm coming back to on the sexually-oriented performance aspect, we have that, as Judge Sung pointed out, that's the limiting framework to start with. It must appeal to the prurient interest. And then it gives some examples of things that meet that. Why isn't that a sufficient limiting principle if we can regulate something short of obscenity? And I just want to point out, I think we're on the same page with this that I've made my position on this clear, but that the state's authority to regulate something short of Miller and Ginsberg would be focused exclusively on the ability to do that, not with regard to private businesses, not with regard to locations that have received any form of funding from the state. But if we're looking specifically at a very narrow sliver of the locations where these restrictions apply, the problem with that is that it does not cure the vagueness problems that are elsewhere in the definition of sexually-oriented performances. So these are conjunctive requirements. The law has to give fair notice, and it has to avoid the problem of discriminatory enforcement under the Fifth Amendment, even if the state has the authority to regulate. On the prurient interest in sex, in the actual obscenity definition, I think it's a requirement that the work taken as a whole appeals to the prurient interest in sex. It's not clear to me whether that limitation is included here by the word intended. I also am not sure what it means to feature any of the things listed after that. Has the state taken any position about what those terms mean? I'm not outside of what is in the briefs and in the statute itself. And I'd also like to point out that although that requires an intent to appeal to a prurient interest in sex, that is on behalf of the performer, and the criminal penalties that we're looking at would actually target other entities as well. One of my questions was, how is a sexually oriented business supposed to know what the performer's intent is? Is that a subjective standard or a subjective objective or subjective standard? Do you know? I don't know. I don't know, Your Honor. We do have some evidence of how both the drag story, our ban, and the restrictions on sexually oriented performances are being interpreted on the ground in the form of the responses from the City of Helena and the City and County of Butte-Silverboe that were filed with the District Court. And both the City of Helena and the City and County of Butte-Silverboe took a pretty expansive reading of the provisions because their own local government employees would be facing criminal liability under the statute. Were those positions based on the sexually oriented performance restrictions, not the drag story hour? I'm trying to get to the standing issue because there was a contention that none of the plaintiffs claimed that they would violate the sexually oriented performance provisions. Yes. So the law has been applied against Adria Jawort. That was an interpretation of the drag story hour ban. The law also was applied against Plaintiff Montana Pride. That it is unclear whether that was an interpretation of the drag story hour ban or the restrictions on sexually oriented performances. Additionally, Your Honor, I would just point out that a number of plaintiffs directly face criminal prosecution under HB 359. The Plaintiff Rachel Corcoran, a school teacher, can be prosecuted because violations of Title 20 where the drag story hour ban is codified are criminal misdemeanors. Plaintiffs, the Roxy Theater, the Myrna Loy are both entities that have received state funds and sexually oriented businesses according to the terms of the statute or their interpretation of the statute. Additionally, the Montana Book Company and the Imagination Brewing Company directly face criminal prosecution. Now, so when you say they face prosecution, that's because of their interpretation of the statute and not because of any threat of prosecution that's been made from any prosecutorial office. Is that your meaning? That's correct. No direct threat on the record at the hands of the state. That is not required. I didn't. I was just asking you as a factual matter what your argument was. And the other question I have for you is, is it necessary to define a word or phrase in the statute if there are cases that define that word or phrase? Not necessarily. I think that the requirement is just that if you look at the context in which that word appears, if it gives fair notice of what is and what is not allowed. I would like to just touch on the scope of the injunction briefly before I sit down. And the scope of the injunction to the court affirmed should not be narrowed for two reasons. The first is that the issue was waived as this court looked at a similar circumstance in Armstrong v. Brown, just merely kind of gesturing towards cases that deal with the scope of an injunction is not enough to give the district court the first opportunity to determine what the scope of the injunction should be. And then looking here, we have a situation in which enforcement against third parties actually directly interferes with the free speech rights of the plaintiffs because these venues and local governments themselves face criminal liability at the hands of Attorney General Knutson. And that is for the reason why on the merits, the scope should not be narrowed. With that, Your Honors, we ask that the court affirm. Thank you, counsel. Rebuttal. Thank you, Your Honors. Given the limited amount of time I have left, I would have to defer to the rest on the briefs or whatever issues I'm not able to address today. But to answer some of the questions I received previously during the time we had, we weren't able to locate the specific statute or a case law regarding the mens rea presumption or the applicability to universities. We can submit an additional briefing. I know we have briefed that in other cases that just wasn't an issue. In this case, that was brief. As far as absolute liability goes, the statute that addresses that is Montana Code Annotated 45-2-104. And that says absolute liability is only applicable if clear legislative intent and fine less than $500. But seeing that I'm running out of time. Counsel, you can finish your thoughts. You don't have to rush. Thank you. As far as the definition of performance itself, I think the denial that that definition pre-exists in the code under Title 45, Chapter 8 absolutely applies in this case to the definition of sexually oriented performance. If you ask what a performance is, that's defined in the code in the very title and chapter where the codification instructions say this section should be codified. Counsel, do you think any of these provisions are overbroad? I think that's a question of, honestly, I haven't sat and thought about all the overbroad applications. But I mean, the point is that there are absolutely constitutional applications of this. So do you think this statute is constitutional in its entirety, every word of it? Well, I don't know that that's the proper framing of the issue for doing an overbreadth analysis. But if we look at this statute, you think the entire statute is constitutional. Is that your view? In other words, constitutional in all possible applications? I don't know that any statute necessarily is. Well, this is a facial challenge. Right, and that's the plaintiff's burden to prove. And there hasn't been, if the state can demonstrate constitutional applications, which I believe is evidence on the face of the bill, that defeats the facial challenge under the SIRLERNA standard. But also, it requires, if under an overbreadth standard, we have to do the plain legitimacy. So you think the drag story hour is constitutional? I believe so. That's linked to the state's funding decisions and specifically to its educational goals, as well as the interest in prohibiting conduct that's aimed at disrupting childhood development and education. But to address the issue of the scope of the injunction, for example, that was set out in the applicable standards section in the defendant's brief below. And on top of that, I believe the scope of an injunction is a jurisdictional issue that even if this court decides that we're not properly raised below, it can address on appeal. And that also goes to the narrowing construction of the statute. As in conclusion, I would point... Can I ask you one more question? Sure. I've been trying to find a case. So in the category of speech that is not obscene, either for adults or children, but is sexually explicit or sexually oriented and what the court has called indecent, generally, the court has recognized a state compelling interest in preventing an unwilling listener, minor listener, from inadvertently hearing or seeing such speech. In any of those cases, has the court or a court of appeals upheld criminal, a statute that regulates that type of speech and imposes criminal penalties like the kind here? I believe so. And I think those were, at least some were included in our briefs, but the one that comes to mind is, I think it was the New York referber case. Okay. That would be your site. Okay. That expressly said that it may not be obscene by legal standards, but... If you could sum up, counsel. Absolutely. In summary, it's the state's position that the court should follow the reasoning and outcome that this very court reached in the Tucson v. City of Seattle case that it issued just this February, addressing remarkably similar circumstances as those present here. I would encourage the court to analyze that in depth. But ultimately, it's clear that the law establishes an outer limit on expressive conduct, especially sexualized expressive conduct. That is, when children are involved, the calculation changes. Here, the plaintiffs expressly contemplate and even advertise the involvement of children. This is a crucial aspect of the proper analysis that the court below wholly ignored whatever analysis it applied. All right, counsel. We understand your argument. You're reading now, so... Thank you, Your Honor. All right. Thank you. That completes our case. The case just argued is submitted for decision by the court. That completes our calendar for today. This court for this session is adjourned.
judges: RAWLINSON, FORREST, SUNG